**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

PARC AT DULUTH, LLC, :
:
    Plaintiff, :
:
v. : CIVIL ACTION NO.
: 1:10-CV-2752-RWS
CINTAS CORPORATION NO. 2, :
    Defendants. :
:
:
:

## **ORDER**

This case comes before the Court on Defendant's Motion to Exclude the Report and Testimony of Dale C. Hansen [38], Defendant's Motion for Summary Judgment [39], Plaintiff's Motion for Leave to File Surreply Brief to Defendant's Motion to Exclude Testimony [55], Defendant's Motion to Compel Plaintiff's Response to Defendant's Second Request for Production of Documents [56], and Plaintiff's Motion for Attorney's Fees [58]. After a review of the record, the Court enters the following order.

## **I. Factual Background**

The Plaintiff, Parc at Duluth, LLC ("the Parc"), is an "independent

retirement community that serves residents sixty-five (65) and older who prefer to live in a congregate setting where meals, housekeeping, transportation, laundry, and social activities are provided." Def.'s SMF, Dkt. No. [39-1] at ¶ 1; Pl.'s Resp. SMF, Dkt. No. [50] at ¶ 1. This facility opened in 2003. Def.'s SMF, Dkt. No. [39-1] at ¶ 2; Pl.'s Resp. SMF, Dkt. No. [50] at ¶ 2.

In 2007, a third-party from Integrated Fire Protection inspected the sprinkler system at the Parc and determined that the piping was properly aligned. Def.'s SMF, Dkt. No. [39-1] at ¶¶ 3-4; Pl.'s Resp. SMF, Dkt. No. [50] at ¶¶ 3-4. Subsequently, on January 15, 2009, Plaintiff and the Defendant, Cintas Corporation ("Cintas"), entered into a sprinkler-system service agreement. Def.'s SMF, Dkt. No. [39-1] at ¶ 5; Pl.'s Resp. SMF, Dkt. No. [50] at ¶ 5. Pursuant to that contract, Cintas was supposed to provide annual sprinkler system inspections pursuant to NFPA 25, the standard adopted by the State of Georgia. Def.'s SMF, Dkt. No. [39-1] at ¶¶ 6-7; Pl.'s Resp. SMF, Dkt. No. [50] at ¶¶ 6-7.

On January 15, 2009, William Hutto, a Cintas employee, performed an NFPA inspection and did not note any issues with the sprinkler pipes' grading. Def.'s SMF, Dkt. No. [39-1] at ¶ 9; Pl.'s Resp. SMF, Dkt. No. [50] at ¶ 9. But

2

on January 9, 2010, a sprinkler pipe broke in Plaintiff's attic causing water damage. Def.'s SMF, Dkt. No. [39-1] at ¶ 10; Pl.'s Resp. SMF, Dkt. No. [50] at ¶ 10. Following an investigation into the matter, the Plaintiff determined that the break occurred because the sprinkler pipes were improperly pitched at installation. Def.'s SMF, Dkt. No. [39-1] at ¶ 11; Pl.'s Resp. SMF, Dkt. No. [50] at ¶ 11. Once it learned that the defect had occurred prior to the 2009 inspection, Plaintiff then filed this suit, alleging: 1) breach of contract; 2) negligence; and, 3) negligence per se. Defendant now moves for summary judgment on all counts.

## II. Discussion

### A. Motion for Surreply to Defendant's Motion to Exclude the Expert Testimony of Dale Hansen

Plaintiff seeks to file a surreply to address whether Hansen's misalignment opinions are characterized as lay or expert opinions. This issue was first raised by the Defendant in its reply brief. Although neither the Federal Rules of Civil Procedure nor this Court's Local Rules authorize the filing of surreplies, the Court may, in its discretion, permit the filing of a surreply when a valid reason exists, "such as where movant makes new arguments in its reply brief." Frederick v. Mercedes Benz USA, LLC, 386 F. Supp. 2d 1190, 1197

3

(N.D. Ga. 2005). As well, the Court notes that Defendant does not oppose this motion. See LR 7.1B, NDGa ("Failure to file a response shall indicate that there is no opposition to the motion."). As Plaintiff's proposed surreply addresses only a new issue and Defendant does not oppose this action, Plaintiff's Motion for Leave to File Surreply Brief to Defendant's Motion to Exclude Testimony [55] is **GRANTED**.

B. Motion to Exclude the Testimony and Expert Report of Dale C. Hansen

Federal Rule of Evidence 702 governs the admissibility of proposed expert evidence:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

AO 72A
(Rev.8/82)

The trial court, as the gate-keeper, must determine that the testimony is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." Daubert, 509 U.S. at 589-91 (quoting United States v. Downing, 753 F.2d 1224, 1242 (3d Cir. 1985)). The trial court must also "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co. Ltd. v. Carmichel, 526 U.S . 137, 152 (1999). The Eleventh Circuit has synthesized the existing rules into a three-part inquiry, instructing courts to consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. City of Tuscaloosa v. Harcros Chemicals, Inc., 158 F.3d 548, 562 (11th Cir. 1998), reh'g and reh'g en banc denied, 172 F.3d 884 (1999).

Here, Defendant challenges Hansen's qualifications to opine on the NFPA standards. Specifically, it argues that while Hansen is a fire-protection

engineer who designs and constructs fire protection systems, this experience does not qualify him to opine on what should have occurred during a NFPA 25 inspection as Hansen has never performed a NFPA 25 inspection and has never taken any classes or attended any seminars on the subject. Moreover, Defendant argues that Hansen's experience designing and constructing sprinkler systems does not constitute experience under NFPA 25 as NFPA 25 is a post-construction standard for yearly sprinkler inspections.

In response, Plaintiff argues that Hansen has spent his entire professional career working with fire protection systems. He "has designed, inspected, and tested scores of fire protection systems, including the dry pipe sprinkler system of the type installed at Parc at Duluth." Pl.'s Opp., Dkt. No. [45] at 7. And he has extensive knowledge of NFPA 25 as he must make sure that the fire-protection systems he designs will pass NFPA 25 post-construction. Hansen also works as a code consultant wherein he is "regularly called upon to read, understand, interpret, and explain the requirements of a wide range of NFPA standards, including NFPA 25." Id. at 8. He is also a member of and regularly attends fire protection association conferences. Id.

6

While all of this may be true, Hansen has never conducted an NFPA 25 inspection and thus would not be able to opine about what should occur in such an inspection. Plaintiff argues that this situation is akin to doctors testifying for nurses in that Hansen's expertise as a fire-protection engineer "necessarily encompasses" that of an NFPA inspector as it is the fire-protection engineer who designs and installs the initial system. See McDowell v. Brown, 392 F.3d 1283, 1296-97 (11th Cir. 2004) (holding that a doctor could provide expert opinions regarding a nurse's standard of care because a "physician's area of expertise necessarily encompasses the standard of care applicable to nurses"). However, nurses operate in a subset of the doctor's realm. But here, once the system is designed and completed, it is an NFPA inspector who takes over and it is the NFPA inspector who then completes the yearly inspections. Therefore, Hansen has no basis upon which to opine what is reasonable and customary for an NFPA 25 inspector to do during such an inspection as he has never done one.

However, contrary to the Defendant's view, the Court will allow Hansen to testify that the defect would have been readily apparent when the inspector observed the system. While Defendant argues that this is a lay opinion, the

7

Court finds that a lay person–who never inspects and views fire-protection systems–would not know whether the system was misaligned without some evidence about proper fire-protection construction. Thus, this testimony would be beneficial to the jury. As well, Hansen is clearly qualified to provide this type of opinion as he does visual inspections and is involved in designing such systems. In sum, the Court will allow Hansen to opine about whether the misalignment was readily observable and whether the system was properly constructed, but Hansen may not testify about what would have been required under NFPA 25. In so far as Hansen's opinions go to the NFPA 25 issue, the Court will deem those portions of his expert report and affidavits as **STRICKEN**. Defendant's Motion to Exclude Hansen's Opinions is thus **DENIED, in part** and **GRANTED**, **in part**.

### C. Motion for Summary Judgement

Defendant next moves for summary judgement on two grounds: 1) Defendant did not violate a contractual or statutory duty as it was not required to check for pipe misalignment during an NFPA 25 inspection; and, 2) Plaintiff has produced no evidence that the pipe was misaligned at the time of Defendant's inspection, only that it was misaligned at the time of the failure,

8

and thus Plaintiff cannot prove causation. See Def.'s MSJ, Dkt. No. [39-2] at 4-7; Def.'s Reply, Dkt. No. [54] at 2-5. The Court will consider each argument in turn.

### 1. Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

AO 72A
(Rev.8/82)

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

10

### 2. Defendant had a duty to check for pipe misalignment.

Defendant first argues that it did not have a duty to check for pipe misalignment during an NFPA 25 inspection. As it was commissioned to complete an NFPA 25 inspection, if NFPA 25 did not require a pipe-misalignment inspection, it could not be liable for breach of contract or negligence as the Defendant would not have breached a duty.

NFPA 5.2.2.1(2002) requires that "[p]ipe fittings shall be in good condition and free of mechanical damage, leakage, corrosion, and misalignment." 2002 NFPA 25 Handbook, Ex. 1, Aff. Charles Key, Dkt. No. [44-1] at 69. However, Defendant maintains that while the 2002 edition of the code requires Defendant to check for misalignment, the NFPA was amended in 2008 and 2011. Since those amendments, the NFPA 25 Handbook has been updated and now reads that "[i]nspections required by this standard are not intended to reveal installation flaws or code compliance violations . . . . Such issues as piping pitch should have been verified during the commissioning of the system." 2008 NFPA 25 Handbook, Dkt. No. [44-1] at 7. But Defendant's expert noted that the inspector would still be looking for "obvious discrepancies" in pipe pitch which could be seen from the floor and would not

11

require tools. Hutto Dep., Dkt. No. [34] at 38:1-9. In response, Plaintiff argues that Georgia has not adopted the 2008 or 2011 amendments to NFPA 2002 and thus, the Handbook construing those amendments is not relevant to this action as the 2008 amendment deleted the misalignment inspection-requirement.

O.C.G.A. § 25-2-4 authorizes the Georgia Safety Fire Commissioner to "adopt such rules and regulations as he deems necessary" to promote fire safety. Pursuant to that authority, the Safety Fire Commissioner specifically adopted "NFPA 25, 2002 Edition, Standard for the Inspection, Testing, and Maintenance of Water-Based Fire Protection Systems" when he adopted the NFPA 25 standard. Ga. Fire Regs., Ch. 120-3-3-.04(21), Dkt. No. [48-2] at 1. Thus, Plaintiff argues, the 2002 Edition controls and any subsequent Handbook, while never preclusive, is not even persuasive in this case.

> It is a cardinal rule of statutory construction that the literal meaning of the statute prevails unless such a construction would produce unreasonable or absurd consequences not contemplated by the legislature. Moreover, in construing language in any one part of a statute, a court should consider the entire scheme of the statute and attempt to gather the legislative intent from the statute as a whole.

Advanced Automation, Inc. v. Fitzgerald, — S.E.2d —, 312 Ga. App. 406, at *3 (2011). Here, pursuant to O.C.G.A.§ 25-2-4, the Georgia Safety Fire

12

Commissioner was given complete discretion to adopt whatever rules and regulations that "he deem[ed] necessary" to promote fire safety. In carrying out that discretion, the Commissioner expressly selected the 2002 NFPA 25 standard. As this standard promotes fire safety, the Court finds that the Commissioner is entitled to deference in his rule selection. See Hicks v. Fla. State Bd. of Admin., 594 S.E.2d 745, 747 (Ga. Ct. App. 2004) (finding that an administrative decision by the Revenue Commissioner was entitled to deference because the General Assembly allowed the Commissioner to promulgate rules or regulations, and that decision had the effect of a rule). Therefore, the 2002 NFPA standard controls and Defendant was required to look for "misalignment."

Moreover, the Court finds that Defendant's argument is strained. The Defendant's witness Hutto expressly recognizes that Cintas is required to look for obvious misalignments but then, at the same time, the Defendant cites a 2008 Handbook which it claims relieves it of that obligation entirely.[1]

---

[1] It is worth noting that the Defendant's own inspection form states "[d]oes the Dry System Piping appear to be graded to prevent Freeze Damage?" Ex. B, Def.'s MSJ, Dkt. No. [39-4] at 5. Thus, it recognizes it should check for piping pitch.

13

As well, the Court notes that when the Commissioner wished to use specific editions of the NFPA, he was explicit. Compare Ga. Fire Regs., Ch. 120-3-3-.04(16), Dkt. No. [48-1] at 28 (selecting the 2003 Edition of NFPA 22) with Ga. Fire Regs., Ch. 120-3-3-.04(22), Dkt. No. [48-2] at 3 (not selecting a specific edition of NFPA 30). By selecting the 2002 Edition, as opposed to leaving that selection blank, the Commissioner retained the 2002 "misalignment" provision. Therefore, the Court finds that Defendant did have both a contractual and regulatory-based duty to inspect for misalignment.

### a. Defendant was required to look for misalignments which a reasonable inspector would have observed.

Defendant next argues that even if it was required to look for misalignments, it was only required to look for obvious ones. In support of the proposition, Defendant again cites the 2008 Handbook, which the Court will not entertain, and Hutto who maintains that misalignments must be limited to obvious ones because the inspector only completes a visual inspection and is limited by his vantage point. Hutto Dep., Dkt. No. [34] at 38:2-39:9. In response, the Plaintiff argues that there is no limitation on the requirement to inspect "misalignments;" thus, any misalignments must be documented. However, the Plaintiff does concede that NFPA 25 only requires a visual

14

inspection and does not require the use of measuring devices. Pl.'s Resp. SMF, Dkt. No. [50] at ¶ 8.

As seen above, if a provision is unambiguous, the plain and ordinary meaning of that term controls. The American Heritage Dictionary of English Language defines "misalignment" as the state of being "incorrectly aligned." AMERICAN HERITAGE DICTIONARY OF ENGLISH LANGUAGE 1122 (4th ed. 2006). It goes on to define "aligned" as "to adjust (parts of a mechanism, for example) to produce a proper relationship or orientation." Id. at 44. Therefore, misalignment means that the object is not properly adjusted to produce a proper orientation. Taking this definition in the context of NFPA 25, the Court finds that Defendant was require to inspect for improper pipe-pitch which a reasonable inspector could have observed at the time of the inspection.

### b. A genuine issue of material fact remains regarding whether a misalignment was observable during Defendant's NFPA 25 inspection.

Here, taking the facts most favorable to the Plaintiff, Plaintiff has produced evidence that a reasonable inspector should have seen the misalignment at issue. Hansen opined that "[t]he deficiency in the pitch of the sprinkler system branch line piping leading to the failure was readily observable

15

from the floor level of the attic walkway." Hansen Report, Dkt. No. [38-2] at 9.
Moreover, when shown a picture of the failure, the Defendant's witness, William Hutto, testified that piping in the picture appeared to be graded improperly. Hutto Dep., Dkt. No. [34] at 77:21-78:7. While Hutto also testified that angle was not visible from his vantage point during his 2009 inspection, this conflict is an issue of fact which cannot be resolved at this time. Id. at 78:8-13. Therefore, Defendant's Motion for Summary Judgement is **DENIED** on duty grounds.

### 2. A genuine issue of material fact exists regarding whether the pipe was misaligned at the time of the 2009 inspection.

Defendant next argues in its reply brief that Plaintiff has not produced any evidence which would prove causation. To prove negligence in Georgia, a plaintiff bears the burden of establishing four elements for negligence: (1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty. City of Douglasville v. Queen, 270 Ga. 770, 771, 514 S.E.2d 195 (1999).

16

Citing Murphy v. Texas Kenworth Co., 615 F.2d 655, 655 (5th Cir. 1980),[2] Defendant argues that Plaintiff must offer evidence that a misalignment existed on the day of inspection for its negligence claims to survive. In Murphy, the former Fifth Circuit affirmed the district court's directed verdict on the grounds that the Plaintiff had not proven causation. Id. There, the Plaintiff had alleged that a misaligned steering shaft caused an auto accident. Id. While the Plaintiff's expert opined that the shaft failure was caused by repeated exertion, the Plaintiff's expert "gave no opinion as to when the misalignment might have occurred." Id. Because the Plaintiff provided no evidence that the defect caused the accident or even that the defect occurred in manufacturing, the Circuit affirmed directed verdict.

The Court agrees that the Plaintiff must present evidence that the defect existed during the 2009 inspection. But Plaintiff's expert has clearly opined that the misalignment has existed since construction and would therefore have been present during 2009. In fact, Defendant included this fact in its own Statement of Material Facts. Def. SMF, Dkt. No. [39-1] at ¶ 11. Defendant tries to deal

---

[2]The Eleventh Circuit has adopted as binding all decisions of the former Fifth Circuit prior to October 1, 1981. Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

with this fact by arguing that a third-party inspected the system in 2007 and did not find a defect. But the 2007 inspection merely creates an issue of fact which this Court cannot resolve on summary judgment. As Plaintiff has presented evidence to support causation, Defendant's Motion for Summary Judgment [39] is **DENIED**.

### D. Motion to Compel and Motion for Attorney's Fees

Defendant has also moved to compel Plaintiff's insurer's underwriting loss control inspections, or Request No. 2 of Defendant's Second Request for Production of Documents. Defendant first filed the underlying request for production of documents on July 1, 2011, or four days before the close of discovery. Therefore, Defendant's production of documents upon which this motion to compel is based violated Local Rule 26.2.A which requires that "[d]iscovery proceedings must be initiated promptly so that discovery is initiated and completed (including the filing of answers and responses thereto) within the time limitations of the discovery track to which the case is assigned." LR 26.2.A, NDGa. The ultimate effect of Rule 26.2.A is to mandate that requests for production of documents be filed at least 30 days prior to the close of discovery. As Defendant has not provided "any circumstance which

prevented [it] from timely and diligently" requesting the documents within the discovery period, Defendant's Motion to Compel [56] is **DENIED**. In re Kemper Ins. Cos., 2003 WL 25672797, * 4 (N.D. Ga. June 17, 2003).

In response to the motion to compel, Plaintiff has additionally moved this Court to order attorney's fees to reimburse it for its time responding to the Motion to Compel. As Defendant's request was clearly untimely, and Plaintiff warned the Defendant that if it filed a motion to compel the Plaintiff would seek attorney's fees, Plaintiff's Motion for Attorney's Fees [58] is **GRANTED.** Defendant is **ORDERED** to pay Plaintiff $1,305.00 in fees, which consists of 4.5 hours of work at $290/hour.

## III. Conclusion

As a result of the foregoing, Defendant's Motion to Exclude the Report and Testimony of Dale C. Hansen [38] is **GRANTED, in part** and **DENIED, in part** and Plaintiff's Motion for Leave to File Surreply Brief to Defendant's Motion to Exclude Testimony [55] is **GRANTED**. Defendant's Motion for Summary Judgment [39] and Motion to Compel Plaintiff's Response to Defendant's Second Request for Production of Documents [56] are **DENIED**. As well, Plaintiff's Motion for Attorney's Fees [58] is **GRANTED**. Defendant

is **ORDERED** to pay Plaintiff $1,305.00 in fees, which consists of 4.5 hours of work at $290/hour.

The parties are **ORDERED** to file a joint, proposed pre-trial order within 30 days of the entry of this order.

**SO ORDERED**, this  13th  day of January, 2012.

_____
**RICHARD W. STORY**
United States District Judge